UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RIZWAN LAHUTI,

    Plaintiff,                          :         Case No. 2:19-cv-4964

    -vs-                                 Judge Sarah D. Morrison
                                          Magistrate Judge Chelsey M. Vascura

GANNETT CO., INC.,
                                          :

    Defendant.

**OPINION AND ORDER**

This matter is before the Court upon Defendant Gannett Company, Inc.'s Motion to Dismiss the Complaint (ECF No. 4), Plaintiff Rizwan Lahuti's Response in Opposition (ECF No. 8), and Defendant's Reply (ECF No. 14). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

**I.    FACTUAL ALLEGATIONS**

On September 6, 2018, Plaintiff Rizwan Lahuti ("Plaintiff"), an Ohio resident, was indicted for rape, sexual battery, kidnapping, and bribery in the Muskingum County Court of Common Pleas. (Compl. ¶¶ 3, 10, ECF No. 1; Indictment, ECF No. 4-1). He initially pleaded not guilty to all charges. (Compl. ¶ 11).

On November 9, 201[8],[1] the Zanesville Times Recorder ("Times Recorder") published an article under the headline "Parents take $5,000 bribe from daughter's rapist" (hereafter the "November Article"). (*Id.* ¶¶ 12, 14). The Times Recorder is owned by Defendant Gannett

---

[1] Although Plaintiff lists the date as November 9, 2019 in the body of the Complaint, the screenshot of the news article at issue and the subsequent substantive discussion demonstrate that the date should read "November 9, 2018."

1

Company, Inc. ("Defendant"), a Delaware corporation with its headquarters in Virginia. (*Id.* ¶¶ 5–8). The November Article states in pertinent part:

> A 39-year-old man bought heroin and marijuana with money he took from his stepdaughter's rapist to keep the girl quiet.
>
> On April 20 Lloyd Thornhill accepted $5,000 from Rizwan Lahuti, the man who raped Thornhill's 18-year-old stepdaughter earlier this year.
>
> The money, according to Assistant Prosecutor Ron Welch, was given to Thornhill and his wife, Amy, in exchange for the couple encouraging the victim to remain silent about the assault. . . .
>
> Lahuti, 36, is scheduled to stand trial in February on one count of rape and one count of kidnapping, felonies of the first-degree, and one count each of sexual battery and bribery, felonies of the third-degree. The maximum penalty for rape is life in prison.

(*Id.* ¶ 15; Def. Ex. 1, ECF No. 4-3). At that time, Plaintiff had not yet been convicted of any crime but instead maintained (and continues to maintain) that the relationship between himself and the victim was consensual. (Compl. ¶ 17).

Plaintiff entered into a plea agreement in the case and pleaded guilty to attempted abduction and bribery on February 25, 2019. (*Id.* ¶ 24; Plea of Guilty, ECF No. 4-4). On March 4, the Times Recorder published another article under the headline "Stepfather gets 24 months in bribery case" (hereafter the "March Article"). (Compl. ¶ 18; Def. Ex. 2, ECF No. 4-3). The March Article states in pertinent part:

> A Zanesville couple appeared in court Monday for sentencing related to their involvement in trying to cover up an assault on the woman's daughter.
>
> On April 20, Lloyd Thornhill, 39, accepted $5,000 from Rizwan Lahuti, the man who was accused of raping Thornhill's 18-year-old stepdaughter. . . .
>
> The money, according to Assistant Prosecutor Ron Welch, was given to Lloyd in exchange for encouraging the victim to remain silent about the assault.
>
> According to Welch, Lahuti pulled into the driveway of the Thornhill home on April 19, with the intent to bribe Lloyd with $5,000 to keep the victim quiet about

>the assault. . . .
>
>Originally charged with one count of rape and one count of kidnapping, 37-year old Lahuti pleaded guilty last week to attempted abduction and bribery.

(Def. Ex. 2). According to Plaintiff, he never assaulted anyone. (Compl. ¶ 20).

On April 1, the Times Recorder published a third article under the headline "It's 18 months in prison for man who assaulted female, bribed parents" (hereafter the "April Article"). (*Id.* ¶¶ 21–22; Def. Ex. 3, ECF No. 4-3). The April Article states in pertinent part:

>A man who bribed the parents of a young woman he assaulted last year was sentenced to 18 months in prison.
>
>Rizwan Lahuti, 37, was originally charged with rape, sexual battery, bribery and kidnapping. Due to a plea agreement with the state, the charges against Lahuti were reduced to attempted abduction and bribery. He is the owner of a local BP gas station and the victim was working for him at the time of the assault.
>
>On April 20, 2018, Lahuti offered 39-year-old Lloyd Thornhill $5,000 to keep Thornhill's 18-year-old stepdaughter quiet about the assault.

(Def. Ex. 3). Plaintiff complains that in addition to the false statements in the headline and the body of the article that he assaulted someone, a picture of himself and his attorney at his sentencing hearing was also published. (Compl. ¶¶ 23–24). He claims that he has suffered a decrease in revenue at the two gas stations that he owns in the Zanesville area due to the publication of the three news articles. (*Id.* ¶ 27).

On November 8, 2019, Plaintiff filed a Complaint alleging one count of defamation and one count of false light invasion of privacy. (ECF No. 1). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. On February 3, 2020, Defendant moved to dismiss the Complaint for failure to state a claim. (ECF No. 4). Plaintiff responded on March 9 (ECF No. 8), and Defendant filed a reply brief on April 3 (ECF No. 14). The Motion is now ripe for review.

3

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

While courts are typically limited to deciding Rule 12(b)(6) motions on the complaint, documents that are not formally incorporated by reference or attached to a complaint may also be considered part of the pleadings if the document is "referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotations omitted). "In such event, the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (internal quotations

4

omitted). The Court may also consider matters of public record, "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

## III. ANALYSIS

### A. Defamation

"A defamation claim against a news organization requires proof that: (1) the organization made a false statement, (2) the statement was defamatory, (3) the organization published the statement, (4) the plaintiff was harmed as a proximate result of the publication, and (5) the organization acted with the requisite degree of fault in publishing the statement." *Anderson v. WBNS-TV, Inc.*, 141 N.E.3d 192, 196 (Ohio 2019).[2] "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Anthony List v. Driehaus*, 779 F.3d 628, 632 (6th Cir. 2015) (internal quotations omitted). The inability to establish any one of these elements is fatal to the claim. *Id.* at 633.

#### 1. November Article

The November Article implicates the second element of a defamation claim. Plaintiff alleges that the headline and the first two sentences of the November Article identifying Plaintiff as a rapist are defamatory since at that juncture, he pleaded not guilty to all charges brought against him. Defendant argues that the headline and the statements in the November Article are not defamatory when construed as a whole and read in context.

A defamatory statement is one that "injures a person's reputation, exposes a person to

---

[2] Both sides apply Ohio law in their briefs. *See Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) ("'Where neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.'") (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)).

public hatred, contempt, ridicule, shame, or disgrace, or affects the person adversely in his or her trade or business." *Sabino v. WOIO, LLC*, 56 N.E.3d 368, 376 (Ohio Ct. App. 8th Dist. 2016).

> "In determining whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances and by reading the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory."

*Smith v. Sandusky Newspapers, Inc.*, No. 3:17CV1135, 2018 WL 3046537, at *3 (N.D. Ohio June 20, 2018) (quoting *American Chem. Soc'y v. Leadscope, Inc*., 978 N.E.2d 832, 853 (Ohio 2012)).

> [T]he words of the publication should not be considered in isolation, but rather within the context of the entire [publication] and the thoughts that the [publication] through its structural implications and connotations is calculated to convey to the reader to whom it is addressed.

*American Chem Soc'y*, 978 N.E.2d at 853. "Specifically, a newspaper headline and the entire body of the article itself are to be considered together in making the determination as to whether a newspaper article is defamatory." *BMT Mgt. LLC v. Sandusky Newspapers, Inc*., 2009 WL 1579079, at *3 (Ohio Ct. App. 6th Dist. 2009).

The headline and the first two sentences, standing alone, would be problematic, because they convey to the reader that Plaintiff committed a violent sex crime. However, Ohio law requires that the Court read the complained of statements in the context of the entire Article. The last paragraph of the short November Article made clear that at that time, Plaintiff had only been *charged* with rape, kidnapping, sexual battery, and bribery and was awaiting trial on those charges. As this Court has explained,

> there may instances when an article is long and complex, the defamatory headlines and subheadlines are numerous and sensational, and the true and correct version of facts is hidden deep in the text of the article—so that a reasonable reader could skim the article and rationally believe the libelous imputations of the headline.

*Crall v. Gannett Satellite Info. Network, Inc*., No. C-2-92-233, 1992 WL 400713, at *4 (S.D.

6

Ohio Nov. 6, 1992) (finding that the news article was not defamatory where it falsely stated that the plaintiff had been jailed on drug charges in the headline but clarified in the short text of the article that he had only appeared in court on misdemeanor possession charges). But that is not the case here. A reasonable reader could not read the November Article and believe that Plaintiff had been convicted of rape. Rather, a reasonable reader would understand the headline and first two sentences are "referring to the unproved, unadjudicated charge that [Plaintiff] had committed a crime, rather than as a bottom-line, unequivocal conclusion that [Plaintiff] had, in fact, done so." *Smith*, 2018 W 304537, at *3.

Accordingly, the November Article is not defamatory as a matter of law.

### 2. March and April Articles

The March and April Articles primarily implicate the first element of a defamation claim. Plaintiff's allegation is essentially the same for both the March and April Articles—it was defamatory to classify what happened with the victim as an "assault" when he never admitted to assaulting anyone and only pled guilty to bribery and attempted abduction. Defendant argues that the March and April Articles are not defamatory, subject to an innocent construction, and most compelling—substantially true.

> Ohio courts ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a "false statement" if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not "false."

*Anthony List*, 779 F.3d at 633 (internal quotations omitted). The Court must consider whether the statements have some truth, are subject to different interpretations, or are substantially true such that the "gist" or "sting" of the statement is substantially true. *Id.* "This is a low threshold." *Id.*

At the time of publication of the March and April Articles, Plaintiff had pleaded guilty to

7

bribery, in violation of Ohio Rev. Code § 2921.02(C), and attempted abduction, in violation of Ohio Rev. Code §§ 2923.02(A), 2905.02(A)(2). (ECF No. 4-4). Under the relevant sections, attempted abduction is "engag[ing] in conduct that, if successful, would constitute or result in[,]" Ohio Rev. Code § 2923.02(A), "[b]y force or threat, restrain[ing] the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]" *Id.* § 2905.02(A)(2). Meriam-Webster's Dictionary defines "assault" in several ways, but in the legal context it is defined as: "a threat or attempt to inflict offensive physical contact or bodily harm on a person (as by lifting a fist in a threatening manner) that puts the person in immediate danger of or in apprehension . . . of such harm or contact." Meriam-Webster, https://www.merriam-webster.com/dictionary/assault (last visited May 26, 2020). This definition of assault fits squarely within the offense of attempted abduction to which Plaintiff admits he is guilty. Thus, even if the statements are misleading in the most general understanding of the term or leave out pertinent facts, they are not materially false. *See Myles v. Raycom Media, Inc*., 136 N.E.3d 873, 877 (Ohio Ct. App. 8th Dist. 2019) (explaining that the newspaper's statement the "texting driver hits four motorcycles" was substantially true where the plaintiff "admitted throughout the pendency of the case, and through her plea in the criminal case, that she was distracted by her phone while driving and hit and injured seven motorcyclists" even if she was not actually texting). "A journalist need not describe legal proceedings in technically precise language." *Sabino*, 56, N.E.3d at 380 (internal quotations omitted). The gist or substance of the statements describing that an "assault" occurred between Plaintiff and the victim are substantially true.

Additionally, circling back to the Court's earlier discussion regarding looking at the statements in the context of the entire publication, both the March and April Articles clearly

8

articulate that although Plaintiff was originally charged with rape and kidnapping, he pled guilty to only attempted abduction and bribery. Thus, a reasonable reader could not come to the conclusion that Plaintiff was convicted of the criminal offense of assault. Moreover, Plaintiff fails entirely to articulate how the publication of an admittedly accurate picture of himself and his attorney during his sentencing hearing in a courtroom open to the public constitutes defamation.

Accordingly, the March and April Articles are not false or defamatory as a matter of law. Defendant's Motion is **GRANTED** as to Plaintiff's first claim for relief.

### B. False Light Invasion of Privacy

Plaintiff also brings a false light claim.

> "In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Croce v. New York Times Co.*, 345 F. Supp. 3d 961, 993 (S.D. Ohio 2018) (quoting *Welling v. Weinfeld*, 886 N.E.2d 1051, 1059 (Ohio 2007)). Defamation and false light claims are "essentially coextensive;" so if the defamation claim fails, the false light claim also fails unless the false light claim "reveals intimate and personal, but false, details of plaintiff's private life" or "encompasses portrayals of the plaintiff in a more positive light than he deserves" *Id.* at 994 (internal quotations omitted). Plaintiff's claims fall in neither of these categories.

Accordingly, Plaintiff has also failed to allege a false light claim as a matter of law. Defendant's Motion is **GRANTED** as to Plaintiff's second claim for relief.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No.

9

4). The Complaint is **DISMISSED.** (ECF No. 1). The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

    **IT IS SO ORDERED.**

        /s/ Sarah D. Morrison
        SARAH D. MORRISON
        UNITED STATES DISTRICT JUDGE